UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Stephen H. Quenroe,

        Plaintiff,

v.

Mortgage Electronic Registration Systems,
Inc.; Aurora Loan Services, Inc.; and Great Northern
Financial Group, Inc.,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 09-3439 ADM/JSM

___

Andrew Dosdall, Esq., Christopher P. Parrington, Esq., Patrick D. Boyle, Esq., and Ryan P. Myers, Esq., Skjold Parrington, PA, Minneapolis, MN, on behalf of Plaintiff Stephen H. Quenroe.

Christina M. Weber, Esq., Wilford, Geske & Cook, PA, Woodbury, MN, on behalf of Defendants Mortgage Electronic Registration Systems, Inc. and Aurora Loan Services, Inc.

___

## I. INTRODUCTION

On January 31, 2012, the undersigned United States District Judge heard oral argument on Defendant Mortgage Electronic Registration Systems, Inc. ("MERS"), and Aurora Loan Services, Inc.'s (collectively "Defendants") Motion for Summary Judgment [Docket No. 36]. Plaintiff Stephen Quenroe ("Quenroe") opposes the motion. For the reasons set forth below, Defendants' Motion for Summary Judgment is granted.

## II. BACKGROUND[1]

In May of 2007, Quenroe purchased a house in Maple Plain, Minnesota. Am. Compl. [Docket No. 26] ¶ 7. To finance the purchase, he executed and delivered a $1.5 million

___

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

adjustable rate note to Great Northern Financial Group, Inc. Quenroe Aff. [Docket No. 44] Ex. A ("Promissory Note") 5. The note was secured by a mortgage delivered to MERS. Id. at 1. The loan was scheduled for repayment in thirty years with a five-year fixed interest rate of 8.125%. Id. at 5. At the time of closing, a representative of the Defendants said that under the terms of the loan, Quenroe's minimum payment was fixed at $5,544.29 per month for the first five years (or first sixty payments), and that this amount was fixed and would not change. Am. Compl. ¶¶ 10–17. The actual terms of the note itself provided that unpaid monthly interest would accrue to the principal balance. Promissory Note 7. Should the accumulation of unpaid interest increase the principal to 115% of the original amount of the loan, however, the minimum monthly payment would increase to cover the monthly loan interest and ensure the principal did not exceed 115%. Id.

Sometime in the fall of 2008, Quenroe defaulted on his mortgage payments. In November 2008, Aurora mailed Quenroe a notice of default. Trompisz Aff. [Docket No. 40] Ex. 3. Quenroe cured the default within the thirty-day limit, but subsequently defaulted again. Id. Ex. 5. Aurora sent notice of this second default by certified mail on January 20, 2009, and subsequently received a delivery receipt. Id. Exs. 4–5. This time, Quenroe was unable to cure the default. See Am. Compl. ¶¶ 31–35. In the subsequent months, Quenroe attempted to contact Aurora a number of times to negotiate a restructuring of the loan or a forbearance, but was not successful. Id. ¶ 31. Quenroe received notice of a sheriff's sale on April 29, 2009. Id. The foreclosure sale was held on June 4, 2009, and MERS was the successful bidder at the sale. Trompisz Aff. Ex. 6.

Around the time of the foreclosure, Quenroe contacted Fresh Start Financial Solutions,

Inc. ("Fresh Start"), a mortgage audit service which identified problems with the origination of the loan. Quenroe Aff. Ex. C. In November 2009, Fresh Start mailed two requests to Aurora describing some of the alleged problems in the loan and lending practices and requesting a number of documents from the loan servicer. Quenroe Aff. Ex. E; Trompisz Aff. Ex. 8. Aurora did not respond to either of the Fresh Start Requests. Am. Compl. ¶ 40.

The redemption period from the sheriff's sale expired in December, and the property was transferred to Aurora by virtue of a Limited Warranty Deed recorded on December 14, 2009. Trompisz Aff. Ex. 7. Quenroe filed this Complaint on December 3, 2009.

### III.  DISCUSSION

**A.    Motion for Summary Judgment Standard**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.    Plaintiff's Claims Fail as a Matter of Law**

In his Amended Complaint, Quenroe brought claims of Breach of Contract, Accounting, Breach of Mortgagee Duty, Breach of Duty of Good Faith and Fair Dealing, Fraud, Negligent Misrepresentation, Violations of the Real Estate Settlement Procedures Act (RESPA) and Minnesota Uniform Deceptive Trade Practices Act, Injunctive Relief, and Attorneys' Fees. Am.

Compl. ¶¶ 8–17.  At oral argument, Quenroe agreed all his claims but the breach of mortgagee duty, fraud, negligent misrepresentation, RESPA, and attorneys' fees claims should be dismissed.

### 1. Breach of Mortgagee Duty

Under Minnesota law, "the mortgagee . . . may fairly and in good faith purchase the premises so advertised, or any part thereof, at such sale."  Minn. Stat. § 580.11.  "The statute itself imposes no fiduciary duty on the mortgagee nor does it concern a mortgagee's actions prior to foreclosure."  Cox v. Mortg. Elec. Registration Sys., Inc., 794 F. Supp. 2d 1060, 1065 (D. Minn. 2011).  Rather, the statute at most proscribes bad faith acts by a mortgagee during a foreclosure sale.  Scott v. Wells Fargo Bank, N.A., Civ. No. 10-3368, 2011 WL 381766, at *4 (D. Minn. Feb. 2, 2011).

Quenroe attempts to extend the reach of the statute to require mortgagees to make good faith efforts to respond to a mortgagor's forbearance requests and to accommodate loan modifications when possible.  Am. Compl. ¶ 58.  Such an expansive reading of Minnesota Statute § 580.11 is unwarranted.  Neither the Defendants' alleged misrepresentations at the time of closing, nor their alleged frustration of Quenroe's attempts to modify his loan, are part of the foreclosure process governed by the statute. Minnesota Statute § 580.11 imposes no duty upon Aurora to modify the loan, and consequently, Quenroe's claims for breach of mortgagee duty fail as a matter of law.

### 2. Fraud and Negligent Misrepresentation

Minnesota law requires a claim for fraudulent misrepresentation to allege the following: (1) a false representation by a party of a past or existing material fact susceptible of knowledge;

(2) the representation was made with the knowledge of its falsity or made as of the party's own knowledge without knowing whether it was true or false; (3) it was made with the intention to induce another to act in reliance thereon; (4) the representation caused the other party to act in reliance thereon; and (5) the party suffered pecuniary damage as a result of the reliance. See Best Buy Stores, L.P. v. Developers Diversified Realty Corp., 636 F. Supp. 2d 869, 887 (D. Minn. 2009). When the representation refers to a future event, the party making the representation must be proved to have "had no intention of performing when the promise was made." Martens v. Minn. Mining & Mfg Co., 616 N.W.2d 732, 747 (Minn. 2000). "To prevail on a claim of fraudulent misrepresentation, the complaining party must set forth evidence demonstrating both actual and reasonable reliance." Hoyt Props., Inc. v. Prod. Res. Group, L.L.C., 736 N.W.2d 313, 320–21 (Minn. 2007). "Whether a party's reliance is reasonable is ordinarily a fact question for the jury unless the record reflects a complete failure of proof." Id. at 321. Where an oral misrepresentation, however, directly contradicts the terms of a written contract, reliance on the oral misrepresentation is unjustified as a matter of law. Davidson v. Wilson, 973 F.2d 1391, 1401 (8th Cir. 1992) (citing St. Croix Printing v. Rockwell Int'l Corp., 428 N.W.2d 877, 882 (Minn. Ct. App. 1988)).

Negligent misrepresentation claims differ only in the required state of mind, necessitating a showing that the defendant "supplie[d] false information" and "fail[ed] to exercise reasonable care or competence in obtaining or communicating the information." Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010) (quoting Florenzano v. Olson, 387 N.W.2d 168, 174 n.3 (Minn. 1986)).

Quenroe alleges Defendants made four oral misrepresentations at the time of closing

upon which Quenroe relied. Am. Compl. ¶¶ 10–13, ¶¶ 66–69. The four representations Quenroe alleges were made by Defendants' representative are: 1) the principal amount of the Mortgage was to be $1,500,000.00; 2) the principal amount of the Mortgage would accrue interest at a rate of 8.125% annually for the first five years of the Mortgage; 3) Quenroe need only pay $5,544.29 per month (the "Fixed Monthly Payment") for the first five years of the Mortgage; 4) nothing could change the Fixed Monthly Payment for the first five years of the Mortgage. Am. Compl. ¶ 67.

A true statement cannot be a basis for a fraud or negligent misrepresentation claim. W. Contracting Corp. v. Dow Chem. Co., 664 F.2d 1097, 1100–01 (8th Cir. 1981) (applying Minnesota law). Quenroe has not indicated in his pleadings how the first two alleged misrepresentations were false. In fact, the promissory note reflects both a loan principal of $1,500,000.00 and a fixed interest of 8.125% for the first five years of the mortgage. See Promissory Note. As such, Quenroe's allegations of fraud and negligent misrepresentation based on the first two statements fail as a matter of law.

The second pair of alleged misrepresentations require more analysis. Quenroe contends that his minimum monthly payments were scheduled to increase after 42 months rather than the 60-month duration promised him by the closer. Mem. in Opp'n to Mot. for Summ. J. [Docket No. 42] 9–10. Assuming that the closer did represent that the fixed monthly payment of $5,544.29 could not change for the first five years of the mortgage, this is in direct contradiction to the terms of the promissory note. See Promissory Note. The loan was structured to provide that any unpaid interest would accrue to the principal. Id. at 6. At no point, however, was the unpaid principal to exceed 115% of the original amount, that is, $1,725,000; if the unpaid

balance reached this ceiling, the minimum monthly payment would immediately increase to "an amount not less than the amount that would pay the interest portion of the monthly payment." Id. at 7.  Under the terms of the promissory note, Quenroe's original minimum monthly payment of $5,544.29 did not cover the monthly interest accumulating on the loan.  Thus, when the unpaid balance ballooned to $1,725,000 in the 42nd month, he was required to pay a higher monthly payment on the loan.  This scenario was explicitly laid out in the Truth in Lending Act (TILA) disclosure which Quenroe signed on May 14, 2007, prior to closing.  Trompisz Second Aff. [Docket No. 47] Ex. 1.  The disclosure provided that after 42 months, Quenroe would face increased payments of $11,667.40 until July 1, 2012, whereupon the interest rate was subject to change.  Id.  The closer's third and fourth representations were therefore in direct contradiction to the written terms of the promissory note.  Consequently, it was unreasonable as a matter of law for Quenroe to rely on the representations of the closer.

      Because the first two alleged statements are true, and Quenroe's reliance on the closer's contradictory statements was unjustified as a matter of law, Quenroe's claims of negligent misrepresentation and fraud fail.

      **3.**      **Violation of the Real Estate Settlement Procedures Act (RESPA)**

      Quenroe alleges that Aurora violated the RESPA by failing to reply to two Qualified Written Responses ("QWRs") sent by Fresh Start on his behalf.  Am. Compl. ¶ 40.  Loan servicers are required to respond to QWRs within 20 days.  See 12 U.S.C. § 2605(e) ("If any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20

days."). Servicers are permitted, however, to specify an exclusive address for the handling of QWRs. See 24 C.F.R. § 3500.21(e)(1) ("By notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests.").

On March 18, 2008, Aurora mailed Quenroe a Notice of Assignment, Sale or Transfer of Servicing Rights. Trompisz Aff. Ex. 9. In the letter, Aurora provided Quenroe with an address to which QWRs must be sent. Id. That address was Aurora Loan Services, Attention: Customer Service Research, P.O. Box 1706, Scottsbluff, NE 69363-1706. Id. Fresh Start mailed two written requests on behalf of Quenroe, both on November 25, 2009, less than two weeks before the end of the redemption period. Am. Compl. ¶ 39. Neither of the requests were sent to the address specifically identified by Aurora in the Notice of Transfer. The first request was sent to National City in Louisville, KY, Trompisz Aff. Ex. 8, and the second request was sent to a post office box in Phoenix, AX [sic]. Quenroe Aff. Ex. E.

Even if the requests otherwise met the statutory requirements, neither of the requests were sent to the address clearly identified by Aurora as the exclusive destination for all QWRs. Therefore, Quenroe's claim under RESPA fails as a matter of law.

    **4.**    **Great Northern Financial Group, Inc.**

Quenroe's sole remaining claims against Great Northern Financial Group, Inc. ("Great Northern") are for fraud and negligent misrepresentation. See Am. Compl. ¶¶ 66–76. Great Northern Financial Group has not joined Defendants' Motion for Summary Judgment. District courts have the power, however, to grant summary judgment sua sponte when "the party against whom the judgment is entered has had a full and fair opportunity to contest that there are no

genuine issues of material fact to be tried and the party granted judgment is entitled to it as a matter of law." Burlington N. R.R. Co. v. Omaha Pub. Power Dist., 888 F.2d 1228, 1231 n.3 (8th Cir. 1989); see also Chrysler Credit Corp. v. Cathey, 977 F.2d 447, 449 (8th Cir. 1992) (affirming a district court's sua sponte grant of summary judgment where the non-moving party's "right to judgment turned on the same issue as [the moving party's] right to judgment"). As previously discussed, summary judgment is warranted on Quenroe's claims of fraud and negligent misrepresentation because two of the statements are true and the other two statements directly contradicted the written agreement, making reliance upon them unjustified as a matter of law. See Section III(B)(2). Therefore, summary judgment is also granted on Quenroe's claims against Great Northern.

### 5. Attorneys' Fees

Given that none of Quenroe's claims survive summary judgment, his claim for attorneys' fees is a moot issue and hereby fails as a matter law.

### IV. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendants' Motion for Summary Judgment [Docket No. 36] is **GRANTED**; and
2. All claims alleged in the Complaint are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: February 9, 2012.